# NO. 12-20-00027-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *THE STATE OF TEXAS* | § | *APPEAL FROM THE* |
| *FOR THE BEST INTEREST* | § | *COUNTY COURT AT LAW* |
| *AND PROTECTION OF L.S.* | § | *CHEROKEE COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

L.S. appeals from an order authorizing the Texas Department of State Health Services to administer psychoactive medication. In two issues, L.S. contends the evidence is legally and factually insufficient to support the trial court's finding that administering the medication is in her best interest and administration of the medication unconstitutionally deprives her of her liberty. We affirm.

## BACKGROUND

A criminal court rendered an order subjecting L.S. to in-patient mental health services pursuant to Chapter 46B of the Texas Code of Criminal Procedure, the statute relating to incompetency to stand trial. The State petitioned the court for an order to administer psychoactive medications to L.S. At the hearing, the application filed by Dr. Stephan Poplar was entered into evidence. Additionally, Dr. Poplar and L.S. testified at the hearing. After hearing the evidence, the court found that L.S. lacks the capacity to make a decision regarding administering medication and that treatment with the proposed medication is in her best interest. Accordingly, the court rendered an order authorizing the administration of psychoactive medications. L.S. appeals the trial court's order.

In her first issue, L.S. asserts that the evidence is legally and factually insufficient to support the trial court's finding that the administration of psychoactive medication is in the best interest of the patient. She complains that the testifying physician's testimony is largely conclusory. She also asserts that there was no testimony that she received adequate information about side effects and no testimony explaining how, or if, the symptoms to be treated would actually restore competency.

## Standard of Review

Texas law requires that orders authorizing administration of psychoactive medication be supported by clear and convincing evidence. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.106(a-1) (West 2017). "Clear and convincing evidence" means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979) (per curiam). While proof must weigh heavier than merely the greater weight of the credible evidence, there is no requirement that the evidence be unequivocal or undisputed. *Id*.

In a legal sufficiency review where the burden of proof is clear and convincing evidence, we must look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its findings were true. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so and should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *Id*. If no reasonable factfinder could form a firm belief or conviction that the matter to be proven is true, the evidence is legally insufficient. *Id*.

When reviewing factual sufficiency, we must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing and then determine whether, based on the entire record, a factfinder could reasonably form a firm belief or conviction that the allegations in the application were proven. *Id*. We must consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding. *Id*. If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id*.

2

The factfinder is the sole arbiter when assessing the credibility and demeanor of witnesses. ***In re H.R.M.***, 209 S.W.3d 105, 109 (Tex. 2006) (per curiam).

**Applicable Law**

A trial court may issue an order authorizing the administration of one or more classes of psychoactive medications to a patient who is under a court order to receive inpatient mental health services. TEX. HEALTH & SAFETY CODE ANN. § 574.106(a). The court may issue an order if it finds by clear and convincing evidence after the hearing that (1) the patient lacks the capacity to make a decision regarding the administration of the proposed medication, and (2) treatment with the proposed medication is in the best interest of the patient. *Id*. § 574.106(a-1). "Capacity" means a patient's ability to (1) understand the nature and consequences of a proposed treatment, including the benefits, risks, and alternatives to the proposed treatment, and (2) make a decision whether to undergo the proposed treatment. *Id*. § 574.101(1) (West 2017).

In making its finding that treatment with the proposed medication is in the best interest of the patient, the trial court shall consider (1) the patient's expressed preferences regarding treatment with psychoactive medication, (2) the patient's religious beliefs, (3) the risks and benefits, from the perspective of the patient, of taking psychoactive medication, (4) the consequences to the patient if the psychoactive medication is not administered, (5) the prognosis for the patient if the patient is treated with psychoactive medication, (6) alternative, less intrusive treatments that are likely to produce the same results as treatment with psychoactive medication, and (7) less intrusive treatments likely to secure the patient's agreement to take the psychoactive medication. *Id*. § 574.106(b).

**Analysis**

Dr. Poplar, L.S.'s treating physician, prepared an application for court ordered authorization for the administration of psychoactive medication. He diagnosed L.S. with bipolar I disorder and noted a prior diagnosis of borderline personality disorder. L.S. refused to take the prescribed medication voluntarily. The doctor indicated that L.S. lacks the capacity to make a decision regarding administration of psychoactive medication because she states she does not have a mental illness and that there is a conspiracy against her. He indicated that she lacks insight into her illness and cannot rationally weigh the risks and benefits of treatment. Dr. Poplar stated that the medication is the proper course of treatment and, if L.S. is treated with the psychoactive medication, her prognosis is fair. If the medication is not administered, the consequences will be

3

that her current behavior will continue, that is, she will continue to exhibit intrusiveness with a demanding and threatening demeanor, accompanied by an expansion of delusional beliefs. Additionally, she will have an increased risk of harming herself and others, and would be unlikely to regain competency. Dr. Poplar stated that he has considered less intrusive treatments and determined that medical alternatives will not be as effective as administration of psychoactive medication. He believed that the benefits of the psychoactive medication outweigh the risks of such medication in relation to present medical treatment and L.S.'s best interest.

Dr. Poplar also testified at the hearing. He affirmed the statements he made in the application, and the application was entered into evidence. He stated that L.S. suffers from bipolar I disorder and was previously diagnosed with borderline personality disorder. He testified that L.S. has not agreed to take medication, and she lacks the capacity to make informed decisions regarding medication. He explained that L.S. has been charged with terroristic threats and harassment and that L.S. does not believe she has a mental illness. She believes there is a conspiracy between her family, law enforcement, and the courts and that medications would prevent her from regaining custody of her son. Dr. Poplar explained that, early in her hospitalization, L.S. showed willingness to work with her treatment team and was not threatening. As time went on, the treatment team became part of the conspiracy. She now believes the team is colluding with her family, the courts, and everyone who says she is not competent. When she looks at her records, she becomes agitated and demands changes. She believes her treatment team is lying, which leads to yelling and screaming at the treatment team. Dr. Poplar testified that he has been recommending medications throughout her hospitalization and, as she becomes increasingly agitated about the records, there is a greater need for medication. Dr. Poplar asserted that the requested medications are in the proper course of treatment and there are no alternative treatments available. The doctor stated that the benefits of the medication outweigh the risks, she will regain competency faster, and medication will not interfere with her ability to confer with her attorney.

L.S. testified, maintaining that she is not mentally ill and not delusional. She explained that her stepmom convinced authorities to say she is incompetent, and her dad and uncle convinced the police to harass and arrest her. She claimed that her family wants to take her child from her. L.S. asserted that her problems are legal issues, which medications will not help, and she will not benefit from medications. She testified that she has taken these medications before, their only effect was to make her tired, and none of them ever helped. She testified that she did not feel that

she should be forced to take the medications. L.S. denied threatening anyone and said there has never been a risk that she would hurt herself or others. Claiming the doctors misinterpreted the situation, she testified that she did not understand why the doctors would write what they did about her in their reports. She explained that the doctors fail to listen to her or to write down the truth, and they twist her words. She denied saying the doctors were colluding with her family. Asserting that the doctors were adversarial, she stated that the doctors were not working with her.

In her sufficiency challenge, L.S. relies on *State ex rel E.G.*, 249 S.W.3d 728 (Tex. App.−Tyler 2008, no pet.), in which we held the evidence was insufficient to support a finding that the proposed medications were in the patient's best interest. There, the only evidence regarding the patient's best interest was in the application. This court determined that a conclusory statement in the application, without any testimony from a physician at the hearing, could not support the order for administration of psychoactive medication. *Id*. at 731-32.

L.S. argues that the testimony provided at the hearing regarding the patient's best interest is no less conclusory than the assertion in the application, and therefore is insufficient. In support of this argument, L.S. cites to *State ex rel B.D.*, No. 12-17-00174-CV, 2017 WL 4161297 (Tex. App.−Tyler Sept. 20, 2017, no pet.) (mem. op.). In *B.D.*, this court held the evidence insufficient to support a finding that administration of psychoactive medication was in the patient's best interest. In that case, we determined that the testifying physician's testimony regarding best interests "was merely a perfunctory recitation of the conclusory statements made in his application." *Id*. at *3. Additionally, the testifying physician offered no testimony as to the consequences to the patient of not administering the medications, his prognosis if the medication is administered, or the alternatives to treatment with psychoactive medication. *Id*.; *see also State ex rel. G.L.*, No. 12-18-00201-CV, 2018 WL 6191110, at *3 (Tex. App.−Tyler Nov. 28, 2018, no pet.) (mem. op.).

We determine that each of these cited cases is distinguishable from the case before us. Here, Dr. Poplar testified in open court as to the statutory considerations required by Section 574.106(b). Dr. Poplar explained that L.S.'s condition deteriorated while in the hospital because she was not on medication, a clear demonstration of the consequences of not administering the medication. This also explains her prognosis if the medication is not administered. Further, he specifically stated that no alternatives are available. Accordingly, Dr. Poplar's testimony

5

adequately covered the question of whether treatment with the proposed medications is in the best interest of the patient.

L.S. told Dr. Poplar and the court that she did not want to take medication. Her attorney asked if she had religious or constitutional objections to taking medication. She responded without answering that question, stating only that she felt she should not be forced to take them. This can be construed as the absence of a religious objection. Her sole complaint about the medications, besides the fact they would not help, was that they make her tired. In contrast, Dr. Poplar testified that the medications were the proper course of treatment and would help her regain competency. He described her deterioration when she was not on medications which led to a greater need for the medications. The court considered all of this testimony in light of Dr. Poplar's statement that there is no alternative treatment available.

L.S. complains that there was no testimony that she received adequate information about the side effects of the medication. The statute does not require such testimony. She also complains there was no testimony explaining how, or if, the symptoms to be treated would actually restore competency. Competency to stand trial requires that the individual have the present ability to consult with her lawyer with a reasonable degree of rational understanding, and a rational and factual understanding of the proceedings against her. *See* TEX. CODE CRIM. PROC. ANN. art. 46B.003(a) (West 2018). Dr. Poplar testified that the medication would not interfere with her ability to confer with her attorney. The judge observed L.S. as she testified and could infer that she would be able to consult with her lawyer in a manner satisfying the statute.

Considering the evidence in the light most favorable to the finding, the record shows that L.S. is charged with engaging in criminal behavior which was brought on by mental illness, and her condition would improve, and her competency would be restored, if the requested medications were administered. Further, in conducting a legal sufficiency review, we are to assume that the trial court resolved disputed facts in favor of its finding if a reasonable factfinder could do so and disregarded all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *In re J.F.C.*, 96 S.W.3d at 266. Accordingly, the trial court could have disregarded L.S.'s assertions that she was not mentally ill or in need of medication. Considering all the evidence in the light most favorable to the findings, we conclude the evidence is legally sufficient for a reasonable trier of fact to have formed a firm belief or conviction that the proposed medications are in L.S.'s best interest. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.106(b).

6

In a factual sufficiency review, we consider whether a reasonable factfinder could not have resolved disputed evidence in favor of its finding and, if there is such evidence, whether that evidence is so significant that a factfinder could not have reasonably formed a firm belief or conviction that administering the medication is in the patient's best interest. *See In re J.F.C.*, 96 S.W.3d at 266. The court was entitled to disbelieve L.S.'s testimony that she was not mentally ill, her problems were merely legal issues, and that the doctors misinterpret what she says. *See In re M.H.*, No. 02-16-00160-CV, 2016 WL 4411114, at *5 (Tex. App.–Fort Worth Aug. 19, 2016, no pet.) (mem. op.). The trial court found that L.S. lacks the capacity to make a decision regarding administering the proposed medications and that treatment with the medications is in her best interest. In short, there was not any disputed evidence that the trial court could not reasonably have resolved in favor of its ruling. Accordingly, the evidence is factually sufficient to support the trial court's determination that administration of psychoactive medications is in L.S.'s best interest. *See In re J.F.C.*, 96 S.W.3d at 266. We overrule L.S.'s first issue.

## DENIAL OF LIBERTY

In her second issue, L.S. contends the administration of psychoactive medication unconstitutionally deprives her of her liberty to reject medical treatment. She argues that the government does not have an important interest in medicating her to render her competent to stand trial because she is not accused of committing a serious crime, one that allows for a defendant to be imprisoned for more than six months if found guilty.

An individual has a constitutionally protected liberty interest in avoiding the involuntary administration of antipsychotic drugs. *Sell v. United States*, 539 U.S. 166, 178 (2003). Under certain circumstances, the United States Constitution permits the government to involuntarily administer antipsychotic drugs to a mentally ill defendant facing serious criminal charges in order to render that defendant competent to stand trial. *Id*. at 179. One requirement is a finding that important governmental interests are at stake. *Id*. at 180. This finding is satisfied where the defendant is accused of a serious crime, which has been defined as one for which a defendant may be sentenced to imprisonment for more than six months. *See Baldwin v. New York*, 399 U.S. 66, 69 (1970).

Dr. Poplar testified that L.S. was charged with terroristic threats and harassment. L.S. described conflicts between her and her stepmom, testifying that her stepmom had her arrested for

7

a poem she wrote. A terroristic threat is a Class A misdemeanor if it is committed against a member of the person's family. TEX. PENAL CODE ANN. § 22.07(c)(1) (West 2019). A Class A misdemeanor is punishable by a fine, confinement in jail for a term not to exceed one year, or both. *Id*. § 2.21 (West 2019). Because L.S.'s potential punishment is greater than six months of imprisonment, the crime she is charged with is a serious crime, and an important governmental interest is at stake. We overrule L.S.'s second issue.

## DISPOSITION

Having overruled L.S.'s two issues, we ***affirm*** the trial court's order authorizing the administration of psychoactive medication.

JAMES T. WORTHEN
Chief Justice

Opinion delivered April 22, 2020.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

### APRIL 22, 2020

### NO. 12-20-00027-CV

### THE STATE OF TEXAS FOR THE
### BEST INTEREST AND PROTECTION OF L.S.

Appeal from the County Court at Law

of Cherokee County, Texas (Tr.Ct.No. 42.875)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the order authorizing administration of psychoactive medication.

It is therefore ORDERED, ADJUDGED and DECREED that the order of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*